**Natale F. CARABELLO, Jr., Appellant**

v.

**BOARD OF PENSIONS AND RETIREMENT.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2005.
Decided Feb. 27, 2006.

---

Natale F. Carabello, Jr., appellant, pro se.

Eleanor N. Ewing, Philadelphia, for appellee.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

Natale F. Carabello (Carabello) appeals from the Order of the Court of Common Pleas of Philadelphia County (trial court), which affirmed a decision of the Board of Pensions and Retirement of the City of Philadelphia (Pension Board) dated August 21, 2003 denying Carabello's request to change the classification of his pension plan. We affirm the trial court for the reasons that follow.

Carabello was employed by the City of Philadelphia (City) from January 1, 1970 until March 31, 1980. At all times during this phase of his employment, he was a member of Plan J, as provided in Section 202.1(a) of to the Retirement System's Pension Ordinance, approved December 3, 1956. However, he subsequently withdrew his pension contributions in April of 1983. On May 4, 1983, Carabello wrote a letter to Anthony Witlin at the Board of Pensions and Retirement confirming the withdrawal of his pension contributions. On May 13, 1983, Carabello wrote another letter to Mr. Witlin stating:

> This is to confirm my understanding that if I was to be reemployed by the City for any length of time, I could

redeposit the money recently withdrawn from my pension fund, and the redepositing of said money would, in effect, maintain my pension. Please contact me if my understanding is in error.

On May 17, 1983, Mr. Witlin sent a letter to the staff at the Pension Board stating:

The Pension Ordinance as presently written allows one returning to employment with the City of Philadelphia as a full-time employee to return their pension contributions to the Municipal Retirement System. If done within one year of return to employment, there is no interest charge and full credit is given for repayment of all contributions withdrawn.[1]

On January 8, 1987, City Council enacted an ordinance entitled Municipal Retirement System Benefit Plan 1987 (Plan 87), which provided in Sections 103 and 106 that separated employees who had not left their contributions in the system and who were re-employed on or after January 8, 1987 become subject to the provisions of Plan 87.

On February 21, 1995, Carabello returned to employment with the City and was placed under Pension Plan Y, a modified Municipal Plan 87 that became effective for employees hired on or after October 2, 1992. Carabello wrote a letter to the Board, dated October 18, 1995, stating his intention to repurchase prior service credit with a lump sum payment and payroll deductions. This request was processed. On November 2, 1998, the Board prepared a "Final Compensation and Pension Contributions Review" for Carabello that indicated his plan as "Y."

Carabello left City employment on October 11, 2002. He receives a retirement benefit of $1,149.42 monthly.

Carabello sent a letter to the Board on January 17, 2003 disputing the calculation of his benefits under Plan Y instead of Plan J. The Board denied Carabello's application at its meeting on February 20, 2003 and notified him of his right to a hearing before the Board and right to appeal the Board's decision to the trial court. The Board conducted a hearing on the matter on May 7, 2003 and denied the application on August 21, 2003. Carabello subsequently appealed to the trial court on September 25, 2003.

■ The trial court heard oral arguments from the parties on February 19, 2004 and subsequently denied Carabello's appeal on March 12, 2004. It is from this order that Carabello appeals to this Court.[2]

Carabello raises three arguments for this Court to consider. Initially, did the trial court err when it concluded that his

---

1. Section 213 (Refund of Contributions) of the 1956 Retirement System Pension Ordinance provides as follows:

   213.1 An employee whose services with the City is terminated for any cause other than death or retirement before becoming eligible for any service retirement benefits shall be repaid the total contributions made by him into the retirement system without interest.

   213.2 Upon refund of such contributions, all rights of the employee or any beneficiary under the ordinance shall cease and determine.

2. Where, as in this case, a complete record was developed before the local agency, a court reviewing the matter on appeal must affirm the agency unless it determines constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or that necessary findings of fact were unsupported by substantial evidence. *Public Advocate v. Philadelphia Gas Comm'n*, 544 Pa. 129, 674 A.2d 1056 (1996).

pension rights under Plan J ceased upon refund of his contributions in 1983. Second, did the trial court err when it ruled that his placement in Plan Y did not breach his pension contract under Plan J. Last, did the trial court err when it ruled that the principles of detrimental reliance and equitable estoppel were not applicable. We will dispose of these issues *seriatim*.

■ Carabello voluntarily left the system by removing all of his prior contributions in 1983. At this point Carabello terminated all of his rights to benefits under Plan J. Plan J was in effect during Carabello's first employment with the City and it provided at Section 213.1 under Refund of Contributions that "all rights of the employee or any beneficiary under the ordinance shall cease and determine." The subsequent Plan 87 Ordinance in effect upon Carabello's rehiring to the City provided that a former employee was entitled to remain in Plan J upon reemployment only if he had retained his contributions within the system and thus had stayed a member of Plan J.

This Court has previously ruled on nearly an identical issue in *Carroll v. City of Philadelphia, Bd. of Pensions and Retirement Mun. Pension Fund,* 735 A.2d 141 (Pa.Cmwlth.1999). In *Carroll,* the plaintiff had resigned from City employment as a member of Plan J and had withdrawn his Plan J pension contributions. Plan 87 was subsequently passed, and Carroll was later rehired. Under Plan 87, Carroll was assigned to Plan M. This Court held that "it is clear that, as a matter of law, Carroll cannot be a member of Plan J, but rather the terms of his pension are controlled by the provisions of Plan M." *Id.* at 145. The same is true in the case *sub judice.* Carabello was properly placed in Plan Y under Plan 87 as a matter of law because

he withdrew his pension contributions in 1983.

Second, Carabello has argued that the City's action in placing him in Plan Y was a breach of his contractually vested rights. However under Section 213.2 of the Retirement System Pension Ordinance in effect during Carabello's first period of employment, it specifically states that all rights of the employee shall cease upon refund of pension contributions. Further, Plan 87 specifically allows for the repurchase of service credit by a rehired employee. Plan 87 provides that a rehired employee shall be subject to the retirement plan in force at the time of separation, if, at the time, the employee had not withdrawn his pension contributions. Thus, it is clear from the language that Carabello had no pension rights under Plan J after he withdrew his contributions in 1983. Therefore, the trial court did not err in coming to this conclusion.

■ Last, Carabello asserts that the trial court erred when it failed to apply the doctrines of detrimental reliance and equitable estoppel to his appeal. The trial court opined: "Moreover, Mr. Carabello has produced no evidence that the City misled him or otherwise induced his reliance upon a mistaken interpretation of his pension rights. He cannot, therefore, advance a theory of detrimental reliance or equitable estoppel ..." (Trial ct. opinion, p. 5). We agree with the trial court. Carabello asserts that he detrimentally relied on Mr. Witlin's advice; however, Mr. Witlin simply wrote a letter informing Carabello as follows:

The. Pension Ordinance *as presently written* allows one returning to employment with the City of Philadelphia as a full-time employee to return their pension contributions to the Municipal Retirement System. If done within one year of return to employment, there is no interest charge and full credit is giv-

en for repayment of all contributions withdrawn.

Mr. Witlin was simply informing Carabello of the law as it was currently written. This Court held in *Carroll,*

> Even assuming for the sake of argument that Carroll proved each element of the doctrine of equitable estoppel, to apply that doctrine here would violate the 87 Plan, a City ordinance, and grant Carroll benefits beyond those he is entitled to under that pension ordinance. Therefore, following Central Storage [487 Pa. 485, 410 A.2d 292 (Pa.1979)] and *Finnegan* [126 Pa.Cmwlth. 584, 560 A.2d 848 (1989)], we are constrained to hold that we may not, based on the errors of City employees, apply the doctrine of equitable estoppel to override the 87 Plan and allow Carroll to receive Plan J benefits.

735 A.2d at 145.

The same principle applies to this case for detrimental reliance or equitable estoppel. The fact that Carabello may have relied on Mr. Witlin informing him of the law as it was currently written does not trump the facts that the law was changed and Carabello, upon his second employment with the City, was properly placed in Plan Y under Plan 87. Under *Carroll,* even if Mr. Witlin had mistakenly assured Carabello,—which he did not,—that he would be able to repurchase his credited vested service under Plan J, Carabello would still not be under Plan J.

Accordingly, the Court of Common Pleas of Philadelphia County's order is affirmed.

## ORDER

**AND NOW,** this 27th day of February 2006, the Order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby AFFIRMED.